UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KEYONTE LOVE,

        Petitioner,         Case No. 1:20-cv-10709

v.         Honorable Thomas L. Ludington
        United States District Judge

THOMAS WINN,

        Respondent.
_____/

**OPINION AND ORDER (1) DENYING PETITION FOR WRIT OF HABEAS CORPUS, (2) DENYING CERTIFICATE OF APPEALABILITY, AND (3) DENYING PERMISSION TO APPEAL IN FORMA PAUPERIS**

Petitioner Keyonte Love filed this *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254. Petitioner was convicted after a jury trial in the Genesee Circuit Court of second-degree murder, MICH. COMP. LAWS § 750.317, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, and possession of a firearm during the commission of a felony, MICH. COMP. LAWS § 750.227b. Petitioner challenges his convictions on two grounds: (1) that the trial court erroneously failed to instruct the jury on the lesser offense of manslaughter; and (2) that the trial court erroneously admitted other-acts evidence. Because Petitioner's claims lack merit, his petition will be denied. Petitioner will also be denied a certificate of appealability and permission to proceed *in forma pauperis* on appeal.

I.

The Michigan Court of Appeals summarized the evidence presented at Petitioner's jury trial:

> This case stems from the October 22, 2016, shooting and killing of Melvin Morgan III, who was the boyfriend of defendant's former wife, Shamonica Jolly. Jolly married defendant in May 2015. They had one child together, and Jolly also

had two older children who had a different father. Jolly and defendant separated in approximately March 2016, and started living apart. They filed for divorce in June 2016. According to Jolly, she began a romantic relationship with the victim at some point after she and defendant separated. Eventually, Jolly became pregnant with the victim's child.

During the afternoon of October 22, 2016, Jolly and the victim had been running errands after dropping off Jolly's children at the home of Toveka Owens, who was the stepmother of Jolly's half-brother. Jolly and the victim later returned to Owens's house.

Jolly testified that at some point after she and the victim had returned to the house, she walked into the kitchen and saw defendant and Owens. The victim was in the living room. When Jolly entered the kitchen, defendant asked if he could "talk to [her] for a minute." Jolly testified that the victim was standing in the doorway of the kitchen by this point and that before she could respond to defendant's request, the victim stated that Jolly "really don't have anything to discuss." Defendant responded, "don't worry about it." According to Jolly, a verbal altercation between defendant and the victim ensued at that point. Jolly further testified that defendant indicated that he and the victim could "take it outside," and the victim told defendant to "put down the gun and fight like a man," although Jolly also testified that she did not see a gun anywhere at this point. Defendant walked away and started to leave through the side door. Jolly testified that as defendant was walking toward the door, the victim yelled, "That's okay. If I can't get to you, I'll get to your mom." Defendant's mother was not present at the house. Jolly further testified that defendant turned around, came back up the stairs, pulled a gun out of the pocket of his hooded sweatshirt, and pointed the gun at the victim. Defendant and the victim were "exchanging words back and forth," but Jolly did not remember what they actually said. When asked during her trial testimony what happened next, Jolly testified, "I just heard [defendant] blurt out, watch out, and the gun went off." Defendant was "two steps" away from the victim.

Owens testified that defendant and the victim had a verbal altercation, during which defendant told the victim to come outside and the victim responded, "no, why so you can shoot me outside?" Owens further testified, "When he was saying—talking and saying some words, [defendant] was basically walking out that dog gone [sic] door 'til [the victim] said something he shouldn't have said." According to Owens, the victim said, "I'm gonna beat your ass in front of your mama and then I'm gonna beat your mama ass." Owens testified that defendant turned around and said, "remember what I told you yesterday." Then, according to Owens, defendant turned around and said, "I'm sorry Aunt Tee," after which defendant shot the victim one time.

The victim was declared dead on the scene.

As previously noted, the jury found defendant guilty of second-degree murder, CCW, and felony-firearm. The jury acquitted defendant of the remaining charges.

*People v. Love*, 2018 WL 6625308, at *1–2 (Mich. Ct. App. Dec. 18, 2018).

Following his conviction and sentence, Petitioner filed a claim of appeal in the Michigan Court of Appeals. His appellate counsel filed a brief on appeal that raised three claims:

> I. Did the trial court abuse its discretion in admitting "other acts" evidence under MRE 404(b), where that evidence did not qualify for admission under the Rule as it impermissibly went to show only a propensity to stalk and brandish weapons, and was more prejudicial than probative.
>
> II. Was Appellant denied his due process right to be tried by a properly instructed jury where he was denied a jury instruction on the lesser included offense of voluntary manslaughter, despite the instruction being supported by a rational view of the evidence.
>
> III. Did the prosecutor violate Appellant's due process rights in closing argument by making an improper civic duty argument; alternatively, was defense trial counsel constitutionally ineffective in failing to object.

The Michigan Court of Appeals affirmed. *Id.* at *8. Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the two claims that he now raises in his federal habeas petition. The application for leave to appeal was denied by form order. *People v. Love*, 927 N.W.2d 254 (Mich. 2019).

## II.

Title 28 U.S.C. § 2254(d) curtails federal habeas review of state convictions for claims adjudicated on the merits by state courts. A habeas petitioner must demonstrate that the state court adjudication was "contrary to" or "involved an unreasonable application of" clearly established Supreme Court law. A decision is "contrary to" clearly established Supreme Court law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

Under this standard, a federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 410–11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### III.

### A.

Petitioner's first claim asserts that the trial court erred in failing to instruct the jury on the lesser offense of voluntary manslaughter. He asserts that a rational view of the evidence supported a finding that he shot the victim in the heat of passion, moments after the victim provoked him by threatening his mother. The Michigan Court of Appeals rejected the claim on the grounds that insufficient evidence was presented to warrant the manslaughter instruction:

> Our Supreme Court has explained that words alone generally do not constitute adequate provocation for purposes of voluntary manslaughter, especially when the words are mere insults rather than words "of an informative nature." *People v. Pouncey*, 437 Mich. 382, 391 (1991).
> In this case, the trial court denied defendant's request for a voluntary manslaughter instruction, stating that it found that the words in this case did not "really rise to words of an informative nature." We conclude that the trial court did not abuse its discretion by determining that a voluntary manslaughter instruction was inapplicable to the facts of this case. Defendant shot the victim following a verbal altercation between the two that included a statement by the victim that can clearly be understood from the context as an insult directed at defendant and involving a reference to defendant's mother. Such a brief, run-of-the-mill, and unimaginative insult could hardly be considered one that would fall outside the general principle that mere words do not constitute adequate provocation. See *Pouncey*, 437 Mich. at 391. To the extent the insult was phrased as a threat, such a threat was empty and innocuous considering that defendant's mother was not present, making it impossible for the victim to carry out such a threat at that time. The statement was simply not of the kind that would cause a reasonable person to lose control. *Mitchell*, 301 Mich. App. at 287.Thus, because a rational view of the

> evidence did not support a voluntary manslaughter instruction, *Id*. at 286, the trial court's ruling was not an abuse of discretion.

*People v. Love*, 2018 WL 6625308, at *6–7 (Mich. Ct. App. Dec. 18, 2018) (unpublished) (per curiam).

Under clearly established Supreme Court precedent, trial judges must give instructions that sufficiently explain the law. *Kelly v. South Carolina*, 534 U.S. 246, 256 (2002). But not every deficiency in jury instructions rises to the level of a constitutional violation. *Middleton v. McNeil*, 541 U.S. 433, 437 (2004). "[T]o warrant habeas relief, jury instructions must not only have been erroneous, but also, taken as a whole, so infirm that they rendered the entire trial fundamentally unfair." *Scott v. Mitchell*, 209 F.3d 854, 882 (6th Cir. 2000).

The Supreme Court has narrowly defined the category of infractions that violate fundamental fairness. *Dowling v. United States*, 493 U.S. 342, 352 (1990). Outside the context of death-penalty cases, the Supreme Court has never found the failure to instruct the jury on a lesser offense to violate fundamental fairness. *See Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Bagby v. Sowders*, 894 F.2d 792, 795–97 (6th Cir. 1990) (en banc).

Petitioner's claim fails because, irrespective of whether the lesser instruction was warranted under state law, any error did not contravene any constitutional principal clearly established by Supreme Court law.

Moreover, assuming Petitioner's claim is cognizable, the state court correctly rejected it. Under Michigan law, the crime of murder is reduced to voluntary manslaughter if the defendant "killed in the heat of passion, the passion was caused by adequate provocation, and there was not a lapse of time during which a reasonable person could control his passions." *Ruelas v. Wolfenbarger*, 580 F. 3d 403, 413 (6th Cir. 2009) (quoting *People v. Mendoza*, 664 N.W.2d 685,

690 (Mich. 2003)). Although words might supply adequate provocation, "mere insults" do not. *People v. Pouncey*, 471 N.W.2d 346, 351 (Mich. 1991). The burden of proof to show provocation by a preponderance of the evidence is on the defendant. *Id*. (citing *People v. Darden*, 585 N.W.2d 27, 31–32 (Mich. Ct. App. 1998)). The absence of provocation is not an element of second-degree murder that the prosecution must prove. *People v. Deason*, 84 N.W.2d 72, 75 (Mich. Ct. App. 1985).

Petitioner did not testify in his own defense, nor did he present any defense witnesses. Thus, if any evidence supported a manslaughter instruction, it must have come during the prosecution's case.

Shamonica Jolly testified that as Petitioner was headed towards the door to leave, she heard the victim yell at him, "If I can't get to you, I'll get to your mom." ECF No. 8-9 at PageID.558. Jolly testified that Petitioner then turned around, came back up the stairs, pulled out a gun from his pocket, and pointed it at the victim. *Id.* at PageID.559. Although the two men exchanged additional words "back and forth," Jolly could not recall what was said, and then Petitioner shot the victim. *Id.* at PageID.560. Jolly testified that she was able to get between the two men while Petitioner pointed the gun at the victim, and that Petitioner pushed her out of the way before he fired the gun. *Id.* at PageID.562–63.

Toveka Owens testified:

> "[Petitioner] was going right out the door, but I don't even think he step a foot out the door. I think he was going out the door and about to take a foot out the door 'til Melvin said something about his mama. [Petitioner] turned around and said, remember what I told you yesterday. He turned around and he said, I'm sorry Aunt Tee. And he shot Melvin one time."

ECF No. 8-10 at PageID.669.

Given that this was the only evidence presented as to whether Petitioner was adequately provoked and acted in the heat of passion, the state court correctly concluded that no lesser-offense instruction was warranted. Petitioner's mother was not present, the victim was not armed, and Petitioner had enough control of his faculties to move Jolly away and apologize to Toveka Owens before shooting the victim. Petitioner presented no contrary evidence tending to show that he acted from emotional excitement to the point that a reasonable person might have acted on impulse. Therefore, even if Petitioner's claim could be supported by clearly established Supreme Court law, the state court correctly rejected it. Petitioner's first claim is without merit.

## B.

Petitioner's second claim asserts that the trial court erred by allowing the prosecutor to present evidence that Petitioner previously threatened the victim, and that the victim obtained a personal protection order against him. The Michigan Court of Appeals found that the other-acts evidence was properly admitted under Michigan Rule of Evidence 404(b) because it was relevant to show Petitioner's intent and absence of mistake and did not inject extraneous considerations tending to create jury bias or sympathy for the victim. *People v. Love*, 2018 WL 6625308, at *2–6 (Mich. Ct. App. Dec. 18, 2018).

"Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)). A habeas petitioner bears the burden of demonstrating that a state court's ruling "contradicts Supreme Court precedent and violates a fundamental right." *Bey v. Bagley*, 500 F.3d 514, 521 (6th Cir. 2007). The erroneous admission of prior-acts evidence in violation of Rule 404(b), however, does not violate any constitutional

principal clearly established by Supreme Court law. *Id.* at 519; *Dowling v. United States*, 493 U.S. 342, 352–53 (1990) (admission at defendant's bank robbery trial of "similar acts" evidence that he had subsequently been involved in a house burglary for which he had been acquitted did not violate due process). Like his first claim, Petitioner's second claim fails because he can point to no clearly established Supreme Court law to support it.

But even if Petitioner's objection was cognizable on habeas review, the Michigan Court of Appeals correctly concluded that the other-acts evidence was properly admitted. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person" but may "be admissible for other purposes," including "proof of motive, opportunity, intent, preparation, scheme, plan, or system in doing an act, knowledge, identity, or absence of mistake or accident when the same is material, whether such other crimes, wrongs, or acts are contemporaneous with, or prior or subsequent to the conduct at issue in the case." MICH. R. EVID. 404(b)(1).

Before trial, the prosecutor filed a motion to admit threats that Petitioner made to the victim between March and October of 2016, including the victim attainment of a personal protection order against Petitioner. ECF No. 8-5 at PageID.261–69. The prosecutor asserted the evidence was relevant to establish identity, intent, and absence of mistake. *Id.* The trial court granted the motion, but it excluded the affidavit filed in support of the personal protection order. *Id.* at PageID.272. Then at trial, the prosecution presented testimony from Shamonica Jolly that Petitioner had drawn a gun on the victim on two prior occasions, and that he had once threatened to shoot the victim. ECF No. 8-9 at PageID.530–34. Michigan State Police Detective Jason Walters testified that Jolly and the victim had obtained a personal protection order against Petitioner. ECF No. 8-11 at PageID.1062–64.

This prior-acts evidence was relevant to issues surrounding the original first-degree murder charge. In order to prove that charge, the prosecutor had to establish that Petitioner acted with premeditation and deliberation when he killed the victim, and under Michigan law premeditation and deliberation "may be inferred from all of the facts and circumstances surrounding the killing." *People v Jolly*, 502 N.W.2d 177, 180 (Mich. 1993). Factors that may be considered to establish premeditation include: "(1) the previous relationship between the defendant and the victim; (2) the defendant's actions before and after the crime; and (3) the circumstances of the killing itself, including the weapon used and the location of the wounds inflicted." *People v. Plummer*, 581 N.W.2d 753, 757 (Mich. Ct. App. 1998). Evidence demonstrating that Petitioner previously threatened the victim with a gun was a highly relevant circumstance surrounding the killing, which suggests that Petitioner acted with premeditation and deliberation and that the shooting was not an accident. Petitioner fails to demonstrate that the other-acts evidence was improperly admitted under Rule 404(b), let alone that its admission rendered his trial fundamentally unfair in violation of due process.

Because none of Petitioner's habeas claims merit relief, the petition will be denied.

### IV.

In order to appeal this Court's decision, Petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c)(2). The applicant is required to show that reasonable jurists could debate whether the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). A federal district court may grant or deny a certificate of appealability when it issues a ruling on the petition. *Castro v. United States*, 310 F.3d 900, 901 (6th Cir. 2002).

Here, jurists of reason would not debate this Court's conclusion that Petitioner has failed to demonstrate entitlement to habeas relief with respect to his claims because they lack merit. Therefore, a certificate of appealability is denied.

Petitioner is also denied permission to appeal *in forma pauperis* because any appeal would be frivolous. 28 U.S.C. § 1915(a)(3).

## V.

Accordingly, it is **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus, ECF No. 1, is **DENIED**.

Further, it is **ORDERED** that a certificate of appealability is **DENIED**.

Further, it is **ORDERED** that Petitioner is **DENIED** leave to appeal *in forma pauperis*.

Dated: June 28, 2022   s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge